JULIA AZRAEL (SBN 109049)
Email: jazrael@nemecek-cole.com
**NEMECEK & COLE**
A Professional Corporation
16255 Ventura Boulevard, Suite 300
Encino, CA 91436-2300
Tel: (818) 788-9500 / Fax: (818) 501-0328

Attorney for PROGRESSIVE SELECT INSURANCE COMPANY

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVEN MORA<br><br>Plaintiff,<br><br>vs.<br><br>PROGRESSIVE SELECT INSURANCE COMPANY, et al.<br><br>Defendant. | Case No.: 2:22-cv-08506-SB-JEM<br>Complaint Filed: June 2, 2022<br><br>**DEFENDANT'S RULE 26 REPORT**<br><br>Original Complaint Filed: 06/02/2022<br>Removal Date: 11/21/2022<br>Responsive Pleading Date: 07/12/2022<br>(Proposed) Trial Date: 06/19/2023<br><br>MSC Date: January 13, 2023<br>TIME: 8:30<br>Courtroom: 6C |

**(1) Subject Matter Jurisdiction**

This Court has jurisdiction pursuant to 28 U.S.C. §1332; the amount in controversy exceeds $75,000 and the parties are citizens of different states. Venue is proper in this district pursuant to 28 U.S.C. §1391(b)(2) because a substantial part of the events giving rise to the claim took place in this district.

**(2) Statement of the Case**

*Plaintiff:* Plaintiff has not responded to attempts to submit a joint report. Defendant did serve a copy of the Court's Scheduling order twice and sent several emails to propose a joint report. One meeting that was confirmed in

1

DEFENDANT'S RULE 26 REPORT

December 2022 fell through due to calendaring.

*Defendant:*

Progressive Select Insurance Company ("Progressive") insured plaintiff's 2004 Infiniti. The policy included comprehensive coverage, and Custom Parts and Equipment coverage among others. On February 14, 2022, Plaintiff parked his Infiniti and went off to a "momo" with an acquaintance and they watched the Superbowl and spent the night together. When Plaintiff returned to get his Infiniti, he could not find it. Plaintiff reported the suspected theft to Progressive but was occupied with retrieving his brother's body from Mexico and his brother's funeral and was delayed in giving a complete report to Progressive's claims representative Ryan Rodriguez.

Eleven days after Plaintiff last saw the Infiniti, it was recovered by the police. It took some time to get the police to release the vehicles due to internal requirements of the police department. Meanwhile, Progressive began trying to corroborate the reported facts of loss as is standard in a theft claim. Progressive could not reach the woman with whom Mora watched the Superbowl. Progressive could not reach Mora's common-law wife to confirm facts about the car. Mora said she (and their son) were upset that he spent the time watching the Superbowl with the third party. Moreover, Progressive could not confirm the existence of the common-law wife or locate the restaurant where she allegedly worked.

Progressive ultimately decided to extend coverage given Mora's testimony his common-law wife was too angry to deal with Progressive. The resolution of the claim was hampered because Mora denied his vehicle had a salvage title, which needed to be clarified. Once Mora accepted the Infiniti has been salvaged, Progressive inspected it and appraised the value of the Infiniti and certain of the custom parts and equipment ("CPE"). Progressive denied coverage for some of the "CPE" because certain parts did not meet the policy definitions.

Progressive presented Mora with two options: to be paid the value with

Mora retaining salvage or Progressive retaining salvage. Mora accepted neither and filed the instant lawsuit. Mora has argued Progressive should have paid him the "undisputed" amount in the offers. While that would have been done were the Infiniti being repaired (and a supplement might follow), the vehicle was a total loss and Progressive needed to resolve title (owner or Progressive retain) and settle on a final payment.

Since filing the lawsuit, Progressive moved to compel appraisal. Progressive's first motion was taken off calendar and a second brought. On October 13, 2022, the court granted the motion and the parties are awaiting the outcome of the appraisal which has yet to be completed. Progressive's appraiser, Appraisal Express, has been prepared to complete the appraisal since October 13, 2022. Progressive requested a stay while the appraisal went forward but the court did not grant a stay.

Progressive does not have a **counterclaim.**

Progressive's **affirmative defenses** in its amended answer that it will pursue are:

#4.   Failure to mitigate

#5.   Failure to cooperate – voids coverage

#6.   Unclean hands – erroneous information regarding witnesses prevented confirmation of the vehicle / alleged theft.

#11:  Coverage is void based on policy provisions to cooperate;

#12:  Genuine dispute existed as to the amount and applicability of coverage and accordingly there is no bad faith.

(3)   **Damages/Insurance**.

*a. Damages.*

*Plaintiff:*

*Progressive:*

Progressive does not seek damages.

3
DEFENDANT'S RULE 26 REPORT

      *b. Insurance.*

      *Plaintiff:*

      *Progressive:*

Progressive does not have coverage for this bad faith / breach of contract action.

   **(4)**   **Parties, Evidence, etc.**

      *Plaintiff:*

      *Progressive:*

Progressive's witnesses are Ryan Rodriguez, Stephen Hendrich and Kelly Dobbins of the claims staff. Ron Bartlett of Appraisal Express is a witness regarding the appraisal of the 2004 Infiniti. The key documents are the declarations pages and policy and the claim file. They were provided pursuant to FRCP 26 (a)(1) on December 14, 2022.

   **(5)**   **Discovery**.

      *a. Status of Discovery.*

      *Plaintiff:*

      *Progressive:*

Progressive served interrogatories, requests for admission, and form interrogatories and a request for production in state court. Plaintiff objected to producing responses to discovery that would enable Progressive to confirm the facts of loss; this will be taken up at Plaintiff's deposition and then, as needed, with the magistrate judge. (The responses were received shortly before removal; removal was based on a response to an RFA regarding the amount of damages.) Progressive has subpoenaed documents from Mora's employment to investigate and confirm the claimed loss of earnings. Those records are pending.

      *b. Discovery Plan.*

      *Plaintiff:*

///

DEFENDANT'S RULE 26 REPORT

*Progressive:*

Progressive will depose Mora in February, 2023 after receipt of subpoenaed documents and responses to contention interrogatories which were served on December 21, 2022. Currently, Progressive cannot identify other witnesses concerning the claimed theft because it could not confirm their identities during the claim and Mora objected to providing information during discovery. Progressive will follow up on these identities (plaintiff's companion the night of the theft, Plaintiff's brother, and Plaintiff's common law wife) at his deposition in early February. Further, Progressive has subpoenaed but not received documents about Mora's employment.

**(6) Legal Issues.**

*Plaintiff:*

*Progressive:*

Plaintiff claims breach of contract and breach of the covenant of good faith and fair dealing. Progressive will resolve the issue of the value of the Infiniti through appraisal (the appraisal process is ongoing at this time) and the result should resolve the contract issue of the value of the car. The parties have agreed to an advisory appraisal of the Custom Parts and Equipment. As stated above, Progressive did not believe all of the claimed CPE met the definition in the policy.

If the appraisal confirms Progressive's valuation of the loss, it also will be dispositive of Plaintiff's second claim for relief, for breach of the implied covenant. Although the "breach of an express contractual provision is not a necessary prerequisite to a claim for breach of the implied covenant," (*Brehm v. 21st Century Ins. Co.,* 166 Cal. App. 4th 1225, 1236 (2008) (quotation omitted)), the implied covenant "cannot impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of their agreement," (*Agosta v. Astor*, 120 Cal. App. 4th 596, 607 (2004) (quotation omitted).) Thus, a claim for breach of the implied covenant of good faith and fair dealing is wholly derivative of

DEFENDANT'S RULE 26 REPORT

a claim for breach of the contract from which the duty of good faith and fair dealing arises. (See, e.g., *Gruenberg v. Aetna Ins. Co.*(1973) 9 Cal. 3d 566, 577-78.)

A contrary result, however, would not establish bad faith. As to the breach of the covenant: the issue is whether Progressive behaved reasonably, fairly and promptly. Erroneous denial of a claim for policy benefits by itself does not violate the implied covenant of good faith and fair dealing. Without more, the erroneous denial is merely a breach of contract. To support an implied covenant action, it must be shown that the insurer breached its duty "not to withhold unreasonably payments due under a policy." *Neal v. Farmers Ins. Exch.*, 21 Cal. 3d 910, 920 (1978), *see also* CACI 2331; BAJI 12.92. "[T]he ultimate test of bad faith liability in the first party cases is whether the refusal to pay policy benefits was unreasonable." *Morris v. Paul Revere Life Ins. Co.* (2003) 109 Cal.App. 4th 966, 973 (2003); *Chateau Chamberay Homeowners Ass'n v. Associated Int'l Ins. Co.* (2001) 90 Cal.App. 4th 335, 346 (2001).

Here, the investigation was hampered by Mora's failure to provide information what would allow Progressive to confirm the facts of loss, as well as by the police department not releasing the vehicle in a timely manner and by time necessitated to demonstrate the Infiniti has a salvage title (which affects its value). Then when Progressive offered appraisal to resolve the property damage, Mora did not respond and filed suit.

The insured bears the burden of proving the insurer's delay or denial of policy benefits was "unreasonable" or "without proper cause" as an essential element of the bad faith claim. Requirements for First Party Bad Faith Action, California Practice Guide: Insurance Litigation Ch. 12C-C (The Rutter Group, 2022). Upon production of such evidence, the insurer bears the burden of going forward with evidence negating "unreasonableness." (*Id.*). In this case, Progressive extended coverage in spite of serious questions about the circumstances surrounding the loss, timely resolved the release of the vehicle by the police department, and

then inspected the car, showed DMV evidence of a salvage title (and turning back the odometer) and then presented options for the car value with Mora retaining or not retaining salvage. Progressive was not deterred by an avalanche of profanity Mora hurled at its adjusters. The reasonableness will be established by a jury that hears Mora's version and Progressive's and expert testimony of claims professionals, or alternatively, through a motion for summary judgment if it appears that the evidence supports no other interpretation than that Progressive's conduct was reasonable. *See* Weber v. Langholz, 39 Cal. App. 4th 1578, 1583 (1995) ("A question of fact can become one of law, however, when only one reasonable conclusion can be drawn from the undisputed foundational facts." (citing *Tryer v. Ojai Valley School*, 9 Cal.App.4th 1476, 1480 (1992).

(7) **Motions**.

a. *Procedural Motions.*

*Plaintiff:*

*Progressive:* None.

b. *Dispositive Motions.*

*Plaintiff:*

*Progressive:*

Progressive may bring a motion for summary judgment once the appraisal is concluded (as to contract) and seek summary judgment of the bad faith cause of action on the ground that Plaintiff cannot satisfy the requirement of demonstrating that Progressive's conduct was unreasonable. While Plaintiff's inability to satisfy this element of bad faith is fatal to his claim for relief, the issue is also raised in the 12th affirmative defense of genuine dispute.

c. *Class Certification Motion.*

Not applicable.

(8) **Alternative Dispute Resolution (ADR)**.

a. *Prior Discussions.*

Progressive made an informal proposal of settlement which was rejected. Progressive did not accept Plaintiff's suggested settlement.

      b. ADR Selection.

Progressive is open to the federal panel or to private mediation and has suggested same to plaintiff's counsel.

**(9) Trial.**

      a. Proposed Trial Date. June 19, 2023

This is Progressive's proposed trial date based on the submission of the case to appraisal in October, 2022 and removal in November. Progressive should completed discovery it needs by the end of February and if a motion for summary judgment is brought, it would be prepared to do son in March, 2023.

      b. Time Estimate.

*Plaintiff:*

*Progressive:* Four days.

      c. Jury or Court Trial.

Plaintiff demanded jury in his complaint.

      d. Magistrate Judge.

Progressive is considering a magistrate judge for the trial but has not made a final decision nor received a response from Plaintiff's counsel

      e. Trial Counsel.

*Plaintiff:*

*Progressive:* Julia Azrael, Nemecek and Cole

**(10) Special Requests/Other Issues.**

None from Progressive.

DATED: January 3, 2023

NEMECEK & COLE

By: _____
JULIA AZRAEL
Attorney for Defendant
PROGRESSIVE SELECT
INSURANCE COMPANY

# PROOF OF SERVICE

STATE OF CALIFORNIA )
) ss
COUNTY OF LOS ANGELES )

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is 16255 Ventura Boulevard, Suite 300, Encino, CA 91436-2300.

On January 3, 2023, I served the foregoing document described as: **DEFENDANT'S RULE 26 REPORT**, upon the interested parties in this action in sealed envelopes addressed as follows:

Jason R. Bendel, Esq.
Toni Gesin
BENDEL LAW GROUP
11620 Wilshire Blvd., Suite 900
Los Angeles, CA 90025
Tel: 310.362.6110
Fax: 310.617.7855
jbendel@bendellaw.com
toni@bendellaw.com
Attorney for Plaintiff Steven Mora

☐ **BY U.S. MAIL**: I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice, it would be deposited with U.S. postal service on that same day with postage thereon fully prepaid at Encino, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after day of deposit for mailing contained in affidavit.

☒ **BY ELECTRONIC MAIL [to individual person(s)]**: By electronically transmitting the document(s) listed above to the e-mail address(es) of the person(s) set forth on the attached service list from the e-mail address glee@nemecek-cole.com To my knowledge, the transmission was reported as completed and without error. *See, California Rules of Court, Rule 2.251.*

☒ **BY ELECTRONIC FILING AND SERVICE**: I caused the document(s) listed above to be filed and served via the Court's Electronic Filing System through an approved third-party vendor, and such document(s) were electronically served on the addressee(s) at the email addresses noted above.

☐ **BY PERSONAL SERVICE**: I caused the delivery of such envelope by hand to the offices of the addressee.

Executed on January 3, 2023, at Encino, California.

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

*/s/ Gabrielle Lee*
Gabrielle C. Lee

1
PROOF OF SERVICE

Click Manual Update Doc ID